```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MOHAMED SITA BERETE,              :
                                  :
            Plaintiff,            :    CIVIL ACTION
                                  :
     v.                           :    NO. 11-cv-4111
                                  :
OFFICER CHRISTOPHER CORTAZZO,     :
and READING POLICE DEPT.,         :
                                  :
            Defendants.           :
```

**MEMORANDUM & ORDER**

**Joyner, C. J.**                                   **December 18, 2012**

Before this Court are Defendants' Motion for Partial Summary Judgment (Doc. Nos. 31 and 32), Plaintiff's Response in opposition thereto (Doc. No. 35), and Defendants' Reply in further support thereof (Doc. No. 36). For the reasons set forth in this Memorandum, the Court will grant the Defendants' motion in part and deny it in part.

## I.  FACTUAL AND PROCEDURAL HISTORY

Briefly, this case arises from an encounter between Mohamed Sita Berete ("Plaintiff") and Officer Christopher Cortazzo and other members of the Reading Police Department (with Officer Cortazzo, "Defendants") in February of 2011.[1] The Plaintiff was driving north on 9th Street in Reading, Pennsylvania, a high

---

[1] Given the nature of the claims at issue and the law regarding their resolution, the relevant events are largely undisputed, or any disputes are immaterial. The Court notes where there are material disputes of fact.

1

crime area, in the evening.  The windows on the car that the Plaintiff was driving were tinted.  Officer Cortazzo pulled the Plaintiff over in a traffic stop due to the windows.  As Officer Cortazzo approached the vehicle, the Plaintiff was moving his body to his right.  Officer Cortazzo told the Plaintiff to stop moving, asked him for the vehicle information, and asked who owned the vehicle.  The Plaintiff says that he replied "My man E," a nickname for Edwin Acevedo, the owner of the car.  Officer Cortazzo heard "Manny," and observed that the car actually belonged to Edwin Acevedo.  Officer Cortazzo asked the Plaintiff to step out of the car so he could perform a pat-down of the Plaintiff.

According to the Defendants, after the Plaintiff was out of the car, he pushed Officer Cortazzo in the chest and ran south on 9th Street.  Officer Cortazzo thought he saw the Plaintiff reach toward his right waistband, he deployed his taser, and the Plaintiff fell to the ground.  When the Plaintiff hit the ground, a small pistol fell on the ground next to him.  The Plaintiff was tasered at least one more time.  In the mean time, two other officers, Officers Menges and Demko, arrived.  The officers arrested and handcuffed the Plaintiff, searched him, and found a small plastic bag they suspected and confirmed was cocaine.  Officer Cortazzo went into the Plaintiff's vehicle, allegedly to turn it off and remove the keys, and saw another clear plastic bag with what he suspected and confirmed was cocaine.  Throughout

this encounter, the Plaintiff states that Officer Cortazzo punched, kicked, and insulted him with racial epithets.

The Plaintiff was charged with: (1) improper sunscreening; (2) escape; (3) firearms not to be carried without a license; (4) receiving stolen property; (5) knowing or intentional possession of a controlled substance; (6) aggravated assault; (7) simple assault; and (8) possession with intent to deliver a controlled substance. On April 28, 2011, the Plaintiff filed a motion to suppress all evidence obtained during his arrest, alleging that the evidence was otbained through an illegal search and seizure. Judge Ludgate, of the Court of Common Pleas of Berks County, denied the Plaintiff's motion to suppress, making findings of fact and conclusions of law. In a trial in March of 2012, the Defendant was found guilty of all offenses except aggravated assault, simple assault, and possession with intent to deliver. The Plaintiff filed his Complaint against the Defendants on June 28, 2011, acting *pro se*. The Defendants filed the present Motion for Partial Summary Judgment on August 20, 2012. After receiving an extension for filing his response, the Plaintiff filed his response on November 7, 2012, and the Defendants filed a reply on November 23, 2012.

So far as we can discern, the Plaintiff has asserted the following claims in his Complaint: (1) false or illegal arrest; (2) illegal search and seizure; (3) excessive force; (4) racial profiling and discrimination; and (5) assault and battery.

(Compl., at 4, Doc. No. 3).[2] The Defendants have moved for summary judgment on all claims except for the Plaintiff's claim of excessive force, where they recognize there are disputed issues of material fact. (Br. in Supp. of Defs.' M. for Partial Summ. J., at 1 n. 1, Doc. No. 32). The bulk of the Plaintiff's claims fall under 28 U.S.C. § 1983.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party; a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 (3d Cir. 2007); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the non-moving party cannot rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine

---

[2] Because the Plaintiff's complaint lacks page numbers, the Court refers to ECF's pagination.

4

issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005). When the non-moving party is the plaintiff, she must "make a showing sufficient to establish the existence of [every] element essential to [her] case and on which [she] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

As a preliminary matter, the Court will set forth the standards for qualified immunity and municipal liability, which are relevant to all of the Plaintiff's claims except assault and battery. Defendants assert that Officer Cortazzo is entitled to qualified immunity on any constitutional violations that might have occurred. In Saucier v. Katz, the Supreme Court established a two-part analysis that governs whether an official is entitled to qualified immunity. 533 U.S. 194, 201 (2001). First, the court asks whether the facts shown by the plaintiff demonstrate the violation of a constitutional right. Id. Second, the court inquires whether the right at issue was clearly established at the time of the alleged misconduct. Id. For a plaintiff to prevail, both prongs must be satisfied; however, courts may address the two prongs in any order. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Defendants assert that the Plaintiff's claims against the Reading Police Department fail under Monell v. Department of Social Servs., 436 U.S. 658 (1978). To establish Section 1983

liability against a municipality under Monell, a plaintiff must show the deprivation of a constitutional right and that the constitutional violation resulted from "a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Because liability for both Defendants depends upon the existence of a constitutional violation, the Court will first address whether the Plaintiff has shown sufficient issues of fact to withstand summary judgment on each of his constitutional claims.

**A. False Arrest**

For a claim of false arrest under Section 1983, the salient question is "whether the arresting officer had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). Probable cause for a Section 1983 false arrest claim is conclusively established where a defendant has been convicted of the offenses, so long as the conviction has not been overturned. See Shelley v. Wilson, 339 F. App'x 136, 139 (3d Cir. 2009) ("The jury's finding that Shelley committed each element of these offenses beyond a reasonable doubt defeats his assertion that there was no probable cause to arrest him."); Ehly v. City of Phila., 03-3634, 2004 WL 2583818 (E.D. Pa. Nov. 9, 2004) (Joyner, J.) ("Probable cause for a § 1983 unlawful arrest claim is likewise established by guilty plea or conviction, although not where the conviction

is later overturned."). "Probable cause need only exist as to any offense that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). As such, the fact that the Plaintiff was acquitted of three of the eight charges made against him does not salvage his false arrest claim. The Plaintiff was convicted of several of the charges for which he was arrested, so his false arrest claim fails as a matter of law because his arrest was supported by probable cause.

As the Plaintiff's claim for false arrest does not survive summary judgment, there is no constitutional violation and the Court need not inquire further into qualified immunity or Monell liability on this claim. The Court grants Defendants' motion for summary judgment with respect to the Plaintiff's false arrest claim.

### B. Illegal Search and Seizure

Turning to the Plaintiff's claim for illegal search and seizure, the Defendants contend that the Judge Ludgate's denial of the Plaintiff's motion to suppress in the state court criminal action collaterally estops him from claiming that the searches of his person and vehicle violated his constitutional rights. "[D]efendants in a § 1983 suit can raise the issue of collateral estoppel when the plaintiff attempts to re-litigate in federal court issues decided against him in state criminal proceedings." Ingram v. Lupas, 353 F. App'x 674, 676 (3d Cir. 2009) (citing

7

Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986)).

This Court must apply Pennsylvania preclusion law to determine if the prior state court adjudication precludes his claim. Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993). Under Pennsylvania law, collateral estoppel applies when the following are met: (1) the issue decided in the prior action is identical to the one presented in the present action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. Jones v. United Parcel Serv., 214 F.3d 402, 405 (3d Cir. 2000).

Here, all of the elements of collateral estoppel are satisfied. The Plaintiff claims that the Defendants illegally searched his person and car in violation of the Fourth Amendment. (Pl.'s Resp. to Defs.' Mot. for Summ. J., at 1-3, Doc. No. 35). The Plaintiff presented the same arguments in his motion to suppress the evidence in the state court. (Ex. J to Defs.' M. for Summ. J., Doc. No. 32). Judge Ludgate in the Court of Common Pleas issued a final judgment on the merits of the Plaintiff's claim, making findings and fact and conclusions of law regarding his Fourth Amendment claims. The Plaintiff was clearly a party in the prior state criminal action and he had a full and fair

8

opportunity to litigate the Fourth Amendment issue, as is evidenced by the motion to suppress. The Plaintiff presents a number of arguments as to why he was searched illegally and thus why Judge Ludgate's ruling was erroneous. But any attempts to challenge the propriety of the state court's ruling cannot be made in this civil action; the only means for collaterally attacking a final judgment of conviction are the remedies provided by the state and federal post conviction relief statutes.

As collateral estoppel bars the Plaintiff's claim for illegal search and seizure, the Court need not inquire further into qualified immunity or <u>Monell</u> liability on this claim. Accordingly, the Court grants summary judgment in favor of the Defendants on the Fourth Amendment illegal search claim.

**C. Racial Profiling**

The Court construes the Plaintiff's "racial discrimination and racial profile" claim as a claim under the Equal Protection Clause for racial profiling in the officers' arrest and search of the Plaintiff. For an equal protection claim in the profiling context, a plaintiff must prove that the official actions had a discriminatory effect and were motivated by a discriminatory purpose. <u>Bradley v. United States</u>, 299 F.3d 197, 205 (3d Cir. 2002). To prove discriminatory effect, a plaintiff must show that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected

9

class. Id. at 206. Discriminatory effect may be shown by naming similarly situated members of an unprotected class who were not subjected to the same treatment, or by submitting statistical evidence of bias. Id. The Plaintiff is a member of a protected class; however, he has not produced any evidence to create a genuine issue of material fact regarding discriminatory effect. Therefore, regardless of Officer Cortazzo's intent, the Plaintiff's racial discrimination or profiling claim cannot survive.

Because the Court has determined that the Plaintiff's constitutional claim for racial profiling and discrimination fails, the Court need not inquire further into qualified immunity or Monell liability on this claim. The Court grants summary judgment in favor of the Defendants on the Plaintiff's racial discrimination and profiling claim.

### D. Assault and Battery

The Court concludes that the Plaintiff's assault and battery claims must survive summary judgment with respect to Officer Cortazzo. The Defendants argue that the Plaintiff did not plead the assault and battery claims in his Complaint or raise them during discovery. However, the Plaintiff's Complaint clearly makes mention of his injury, physical, emotional and psychological scars, and Officer Cortazzo's tasering and other physical contact with the Plaintiff. (Compl., at 4-6, Doc. No. 3). The Plaintiff's failure to succinctly set forth the theories

for recovery in the Complaint does not limit the Court's ability to grant relief on those theories. Evans Prods. Co. v. W. Am. Ins. Co., 736 F.2d 920, 923 (3d Cir. 1984). The Plaintiff has therefore plead state law assault and battery claims, which are governed by Pennsylvania law.

"Assault is an intentional attempt by force to do an injury to the person of another." Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994). Battery arises when "the violence menaced in an assault is actually done." Id. "In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." Id. Evidence in the record details Officer Cortazzo's tasering of the Plaintiff. There are a number issues of material fact that preclude summary judgment on Plaintiff's state law assault and battery claims, particularly, whether the force used against the Plaintiff in making the arrest was reasonable. This issue is closely tied to the Plaintiff's excessive force claim.

Because assault and battery are state common law claims, rather than constitutional claims, qualified immunity and Monell liability do not apply. However, liability may be limited under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 et seq. Generally, that statute provides immunity to local agencies. 42 Pa. Cons. Stat. Ann. § 8541

11

(West).  Specifically, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[3]  Id.  Subject to exceptions, that immunity is extended to employees of local agencies performing actions within the scope of their duties.  42 Pa. Cons. Stat. Ann. § 8545 (West).

However, in actions "for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct," the provision allowing for employee immunity does not apply.  42 Pa. Cons. Stat. Ann. § 8550 (West). In Renk v. City of Pittsburgh, the Pennsylvania Supreme Court required a showing of willful misconduct in addition to the elements of the intentional torts of assault and battery for liability to attach, because "[i]t is conceivable that a jury could find a police officer liable for these torts under circumstances which demonstrate that the officer did not intentionally use unnecessary and excessive force."  641 A.2d at 293-94.  Therefore, "[i]n order to exclude police officers from the protection of immunity under the Tort Claims Act, the police

---

[3] Section 8542 provides for exceptions to the general immunity for municipalities and their employees, none of which are relevant to the current claims.  42 Pa. Cons. Stat. Ann. § 8542 (West).

12

officer's 'willful misconduct' must be established in addition to the elements of an intentional tort." Gremo v. Karlin, 363 F. Supp. 2d 771, 793 (E.D. Pa. 2005).

Under section 8550 of the Political Subdivisions Tort Claims Act, Officer Cortazzo can be liable for assault and battery if a jury finds that the elements of assault and battery are satisfied and that he willfully used unnecessary and unreasonable amounts of force. There are genuine issues of material fact regarding Officer Cortazzo's actions that preclude summary judgment as to his liability for assault and battery. However, the Reading Police Department cannot be liable for assault and battery as a matter of law. The exception under the statute for willful misconduct on the part of employees does not erode the immunity provided to municipalities in section 8541 of the Act. Therefore, the Reading Police Department is immune from liability for assault and battery. The Court denies summary judgment on Plaintiff's assault and battery claims with respect to Officer Cortazzo, and grants summary judgment on the same with respect to the Reading Police Department.

## **IV. CONCLUSION**

For the foregoing reasons, the Court grants the Defendants' Motion for Summary Judgment with respect Plaintiff's claims for false arrest, illegal search and seizure, and racial discrimination and profiling. The Court grants summary judgment with respect to Plaintiff's claims against the Reading Police

13

Department for assault and battery.  The Court denies summary judgment with respect to Plaintiff's claims for assault and battery against Officer Cortazzo.[4]  A separate order follows.

---

[4] The Defendants have not moved for summary judgment on Plaintiff's excessive force claim against Officer Cortazzo and the Reading Police Department.  For the sake of clarity, the claims that remain after this motion are: (1) excessive force against Officer Cortazzo and the Reading Police Department; and (2) assault and battery against Officer Cortazzo.